# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **ROBERT M. JAMES** | * | **CIVIL ACTION NO.  11-2129** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The District Court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

### Background & Procedural History

On March 12, 2010, Robert M. James protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments.  (Tr. 95-102).  He alleged disability as of June 1, 2007, because of "COPD," diabetes, and hypertension. (Tr. 109, 123).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 40-63).  Thereafter, James requested and received a September 2, 2010, hearing before an ALJ.  (Tr. 21-39).  However, in a November 22, 2010, written decision, the ALJ determined that James was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that he was able to return to his past relevant work as a

construction supervisor.  (Tr. 8-18).[1]  James petitioned the Appeals Council to review the

unfavorable decision.  On October 27, 2011, however, the Appeals Council denied the request

for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On December 9, 2011, James filed the instant complaint for review before this court.  He

alleges the following errors,

1.      the ALJ's residual functional capacity assessment is not supported by
        substantial evidence; and

2.      the ALJ's step four determination that plaintiff can perform his past relevant work
        as a construction supervisor is not supported by substantial evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa

v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.

Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a

preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's

determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court

---

[1]  The ALJ issued an alternative step five finding that James was able to make an adjustment to other work that exists in substantial numbers in the national economy.  *Id.*

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## <u>Analysis</u>

## I.     <u>Steps One, Two, and Three</u>

The ALJ determined at step one of the sequential evaluation process that James did not engage in substantial gainful activity during the relevant period.  (Tr. 13).  At step two, she determined that James suffered from severe impairments of chronic obstructive pulmonary disease ("COPD"); diabetes; hypertension; and obesity.  *Id*.  She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 14).

## II.     <u>Residual Functional Capacity</u>

The ALJ next determined that James retained the residual functional capacity ("RFC") to

4

perform medium work,[2] reduced by the need for an at-will sit/stand option, and to avoid high

concentrations of dust, fumes, odors, and other pulmonary irritants.  (Tr. 14).

Plaintiff contends that the ALJ erred because she purportedly adopted Brenda Thomas's

"medical opinion" that James retained the exertional capacity for medium work.  (Tr. 16).  As

plaintiff points out, however, Ms. Thomas is not a medical professional; rather, she is an agency

"single decision maker" ("SDM") – a type of agency disability examiner.  *See* Tr. 45.  Because

an SDM or disability examiner is not an acceptable medical source (or even a medical source at

all), Thomas's RFC finding that she constructed for purposes of the agency's initial

---

[2]  Medium work is defined and explained by Social Security Ruling 83-10:
[t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping.  (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist).  Flexibility of the knees as well as the torso is important for this activity.  (Crouching is bending both the legs and spine in order to bend the body downward and forward).  However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs).  In most medium jobs, being on one's feet for most of the workday is critical.  Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

determination, is not afforded the same weight as an opinion of an agency medical or psychological consultant.  *See* 20 C.F.R. §§ 416.927(f) and 416.913(a)-(d), *see also* Program Operations Manual System ("POMS") DI 24501.001 THE DISABILITY DETERMINATION SERVICES (DDS) DISABILITY EXAMINER (DE) – MEDICAL/PSYCHOLOGICAL CONSULTANT (MC/PC).  In fact, on September 14, 2010, the Commissioner's Chief ALJ issued a memorandum affirming that findings by agency SDMs are not opinion evidence to be considered by ALJs in their decisions.  *See* CONSIDERATION OF SINGLE DECISIONMAKER (SDM) RFC ASSESSMENTS AND OTHER FINDINGS – REVISED (Sept. 14, 2010); Pl. Brief, Exh. 1.

Contrary to plaintiff's argument, however, the ALJ did not explicitly adopt the finding of the SDM.  The ALJ merely documented that Ms. Thomas's "opinion" accurately identified that James retained the ability to perform work at the medium exertional level.  (Tr. 16).  The ALJ also warily noted that Ms. Thomas had an unknown degree or specialty.  *Id*.  Although the ALJ ultimately assigned an exertional capacity for medium work that coincided with the SDM's finding, she imposed additional environmental limitations as well as the need for a sit/stand option.

Plaintiff argues that, in any event, once the SDM's findings are excluded from consideration, the remaining record does not provide substantial support for the ALJ's otherwise autonomous finding that James retained the exertional capacity for a reduced range of medium work.  The court agrees.  No medical provider has issued an opinion or medical source opinion regarding the effects of plaintiff's impairments.  Typically, this omission would require reversal and remand.  *See e.g., Lincecum v. Astrue*, Civil Action No. 09-1209 (W.D. La.).  However, the absence of a medical source statement, "does not, in itself, make the record incomplete."  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In such a situation, the court's inquiry properly

"focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."  *Id*.

The undersigned is persuaded that this case presents one of the infrequent instances where the record supplies the requisite substantial evidence to support the ALJ's RFC, albeit at a lesser included exertional capacity.  In other words, any error was harmless.[3]  When, as here, the ALJ determines that a claimant can perform medium work, she also *per se* determines that he can perform sedentary and light work.  20 C.F.R. §§ 404.1567(c), 416.967(c).  In this case, James's own representations and testimony provide substantial evidence to support the ALJ's implicit determination that he retained the exertional capacity for sedentary work.

Sedentary work is defined as

> [t]he ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p.

Here, plaintiff acknowledged that the only impairment that prevented him from working

---

[3]  "Procedural perfection in administrative proceedings is not required."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).  Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

was his COPD.  (Tr. 29).[4]  He testified that he was "not really able to work eight hours a day,"
because after one or two hours, he will "give out," and has to quit.  *Id*.  He also testified that it
took him two and one-half hours to mow his lawn with a push mower because he has to rest for
30 minutes to catch his breath after every ten minutes of mowing.  (Tr. 30-32).  In addition to his
own lawn, however, James also mows his neighbor's lawn using their riding lawn mower.  *Id*.
He also hauls off garbage for his neighbors, and effects minor repairs to their home.  *Id*.

James is able to prepare his own meals, clean his home, and wash his own dishes.  (Tr.
30-32, 114-118).  He does his own shopping, and does not need any help to dress or groom
himself.  *Id*.  He even hunts and fishes seasonally.  (Tr. 118).

On March 29, 2010, James reported on agency forms that although his inability to breathe
caused him to experience some difficulty with lifting, bending, walking, stair climbing, and
completing tasks, he did not report any difficulties with squatting, standing, reaching, sitting,
seeing, using his hands, or concentrating.  (Tr. 119).  James further admitted that he was able to
walk 200 yards before needing to rest for a 20 minute period.  *Id*.  He acknowledged that he
could pay attention always, finish what he starts, and follow written and spoken instructions.  *Id*.

Despite the ample evidence provided by plaintiff to support his ability to perform
sedentary work, he contends that the ALJ impermissibly interpreted, on her own, the results of an
April 28, 2010, pulmonary function study.  *See* Tr. 198-204.  In her decision, however, the ALJ
merely remarked that the test results failed to confirm the requisite degree of severity to be
deemed disabling per se under Listing 3.02.  (Tr. 15).  In fact, she commented that the record did
not contain an adequate medical interpretation of the results.  (Tr. 15).  The court notes, however,

_____

[4]  Plaintiff does not argue on appeal that his myriad other impairments impose limitations
beyond those caused by his COPD.

that on March 27, 2007, Keith Payne, M.D., reviewed a pulmonary function study (that indicated an even greater restriction than the April 2010 study) and opined that it evidenced but a "moderate" airflow obstruction.  (Tr. 182, 207).

Furthermore, although the remaining medical records reflect that James experienced ongoing difficulties from his COPD ever since his original June 13, 2007, diagnosis for the impairment, they also document that his COPD was not so severe as to motivate him to cease his one-plus pack per day smoking habit.  (Tr. 153-181).  Moreover, James's roughly semi-annual visits to the physician regularly confirm that he did not complain of dyspnea upon exertion.  *Id*.

In sum, although the instant record lacks a cognizable medical source statement, plaintiff's own testimony at the hearing and statements to the state agency, plus his medical records, provide substantial evidence to support the ALJ's implicit, alternative finding that he retained the exertional capacity for sedentary work.  Moreover, the ALJ included a sit/stand option, and the need to avoid dust, fumes, odors, and other pulmonary irritants.  These additional limitations are consistent with the plaintiff's testimony.[5]

## III.    Step Four

At step four, the ALJ determined that with an RFC for a limited range of medium work, James was able to return to his past relevant work as a construction supervisor.  (Tr. 16).  Plaintiff contends that the ALJ's step four finding is flawed because the ALJ's hypothetical to the vocational expert did not contemplate the need to avoid exposure to high concentrations of pulmonary irritants – as ultimately incorporated into her RFC.  Plaintiff's argument is well-taken.  Nevertheless, the ALJ appeared to foreshadow this inconsistency, which is why she proceeded to

--------

[5]  Albeit, the restriction regarding dust, fumes, odors, and other pulmonary irritants likely was superfluous given James's self-inflicted exposure to cigarette smoke.

9

render an alternative step five finding.  *See* Tr. 16 and discussion, *infra*.  Moreover, because this court has determined that the record only supports the ALJ's implicit, alternative finding that James retained the exertional capacity for sedentary work, this necessarily means that James was unable to return to his past relevant work, which he performed at the light exertional capacity, or above.  *See* Tr. 125-126, 35-36.  Nevertheless, because the ALJ issued an alternative step five finding, any error was harmless.  *See* n3, *supra* and discussion, *infra*.

## IV.    Step Five

In an abundance of caution that proved worthwhile, the ALJ proceeded to issue an alternative determination at step five of the sequential evaluation process.  At this step, the ALJ determined that plaintiff was a younger individual (49 years old at alleged disability onset date), who subsequently changed categories to an individual closely approaching advanced age, with a high school education, and transferrable skills in the areas of dealing with people and making judgments/decisions.  (Tr. 16-17).  The ALJ observed that given James's vocational factors, and with a residual functional capacity for the full range of *medium* work, the Medical-Vocational Guidelines would direct a finding of not disabled.  20 C.F.R. § 416.969; Rules 203.30 and 203.23, Table 3, Appendix 2, Subpart P, Regulations No. 4.  *Id*.

In addition, because the record supports the lesser included finding that James only retained the exertional capacity for *sedentary* work, the court observes that the Medical-Vocational Guidelines would direct a finding of not disabled were he capable of performing the full range of sedentary work.  20 C.F.R. § 416.969; Rules 201.15 and 201.22, Table 1, Appendix 2, Subpart P, Regulations No. 4.  However, because plaintiff's exertional capacity was reduced by additional limitations, the ALJ necessarily employed vocational expert testimony to conclude that plaintiff could make an adjustment to other work that exists in substantial numbers in the

10

national economy.  (Tr. 16-17).  Specifically, the vocational expert opined that the claimant could perform the representative job of surveillance system monitor.[6]

Plaintiff does not raise any specific error with the ALJ's alternative step five finding other than complaining that, because she purported to deny the claim at step four, she should not have issued a step five finding at all.  However, plaintiff cannot have it both ways.  He successfully argued to this court that the ALJ's step four finding was unfounded; consequently, the ALJ was obliged to proceed to step five of the sequential evaluation process.  Anticipating this possibility, the ALJ issued an alternative step five finding, which, as it now turns out, provides substantial support for the Commissioner's ultimate finding that James was not disabled during the period at issue.  *See Alexander v. Astrue*, 412 F. App'x 719, 723 (5th Cir. 2011) (unpubl.), *cert. denied,* ___ U.S. ___, 132 S. Ct. 259 (2011) (ALJ's failure to distinguish between fourth and fifth steps constituted harmless error).

## Conclusion

The Commissioner in this case was tasked with determining whether plaintiff was disabled.  In so doing, he considered all of the record evidence.  Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision.  Generally,

---

[6]  The surveillance system monitor job, DOT # 379.367-010, is performed at the sedentary exertional level.  (Tr. 37-38).  In this region, there are approximately 2,360 positions and 189,684 positions nationwide.  *Id*.  This incidence of work constitutes a significant number of jobs in the "national economy."  42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number). The court further observes that the surveillance system monitor job does not require any climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, far acuity, depth perception, accommodation, field of vision, exposure to the elements, exposure to caustic chemicals, or exposure to other environmental conditions.  1991 WL 673244 DICOT 379.367-010

courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*.  That exception is present here.  Although the Commissioner's decision obviously is not blemish-free, procedural perfection in the administrative process is not required, and the alleged errors do not undermine the court's confidence in the ultimate decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that James is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 17th day of January 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE